UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 18, 2007**

**Charles R. Fulbruge III**
**Clerk**

07-30032
Summary Calendar

YOLANDA M. SANDERS,

Plaintiff,

ANDRIA C. ROBINSON; CHARLES ROBINSON

Intervenor Plaintiffs-Appellants,

v.

WASHINGTON MUTUAL HOME LOANS, INC., by and through its successor Washington Mutual Bank, formerly known as Fleet Mortgage Corporation

Defendant-Intervenor Defendant-Appellee.

Appeals from the United States District Court for the
Eastern District of Louisiana
No. 05-CV-2166

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Andria and Charles Robinson ("the Robinsons"), intervenor-plaintiffs, appeal the district court's grant of Washington Mutual Home Loan's Motion for Partial Summary Judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

For the following reasons, we affirm.

I.  BACKGROUND

In 2003, the Robinsons became delinquent on their home mortgage loan payments, and Washington Mutual Home Loans ("Washington Mutual") instituted a foreclosure proceeding on November 5, 2003.  The Robinsons thereafter contacted Washington Mutual about their options to avoid foreclosure and indicated their interest in a possible loan modification, which would terminate the foreclosure action and suspend the collection of delinquent amounts.  Washington Mutual developed a proposed modification plan that would (1) reinstate the loan; (2) capitalize amounts for delinquent interest, previously incurred foreclosure fees and costs, and escrow advances; (3) decrease the interest rate; and (4) extend the loan's maturity date.

Washington Mutual sent the Loan Modification Agreement ("LMA"), along with a cover letter explaining the terms of the LMA, to the Robinsons on December 23, 2003.  The cover letter explained that in order for the LMA to become effective, the Robinsons would be required to pay a $500 "Administrative Fee" at the time of execution.[1]  Three days later, on December 26, 2003, the Robinsons signed the LMA and returned it to Washington Mutual, along with a payment that included the $500 Administrative Fee.

---

[1]According to Washington Mutual, the purpose of this fee was to compensate Washington Mutual for the numerous costs associated with modifying the loan agreement.

On July 25, 2005, the Robinsons intervened as plaintiffs in a lawsuit against Washington Mutual.  In the "Amended and Superseding Complaint," the Robinsons asserted a separate claim that the $500 Administrative Fee was "illegal" because it was not provided in a writing signed by them, in violation of LA. REV. STAT. ANN. § 6:1097.[2]

On September 6, 2006, Washington Mutual moved for partial summary judgment on this claim, asserting that (1) federal law preempts the Robinsons' state law claim; (2) even if the Louisiana statute applies, Washington Mutual complied with its requirements; (3) the Louisiana statute does not prohibit the fees at issue; (4) the original Note and Mortgage authorized the fees at issue; and (5) Louisiana's voluntary payment doctrine independently bars the Robinsons' claim.  On November 29, 2006, the district court orally granted Washington Mutual's motion for partial summary judgment.[3] The Robinsons now appeal.

---

[2]LA. REV. STAT. ANN. § 6:1097(A) provides, in relevant part: "Notwithstanding any other law to the contrary, . . . the parties to a federally related mortgage loan may agree to the payment of any fees, charges, costs, and expenses, and the amounts thereof . . . if the fees, charges, costs, and expenses, and the amounts thereof, or the methods for fixing such, are provided in a writing signed by the consumer."

[3]It is difficult for this Court to determine the exact grounds for the district court's ruling.  The court seems to grant the motion based on basic contract principles, stating that the LMA "was a new arrangement . . . and the $500 was disclosed" and the Robinsons "agreed to pay the $500 fee."  Regardless, this Court may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."  *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

II.  STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Atkins v. Hibernia Corp.*, 182 F.3d 320, 323 (5th Cir. 1999). Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

III.  DISCUSSION

The Robinsons assert that the Administrative Fee violates LA. REV. STAT. ANN. § 6:1097 because it was not provided in a writing signed by them. Washington Mutual, on the other hand, asserts the same five arguments contained in its original Motion for Partial Summary Judgment. Because Louisiana's voluntary payment doctrine bars the Robinsons from recovering the $500 fee, this Court need not consider the other issues before it.[4]

Louisiana courts have long held that "[t]here is no principle of law better settled than that money voluntarily paid with

---

[4] The voluntary payment doctrine prevents recovery even if the Administrative Fee violated § 6:1097 because the doctrine goes to the Robinsons' ultimate ability to recover, regardless of liability. *See Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 875 So. 2d 1062, 1070 (La. Ct. App. 2004). Thus, even if the $500 fee was "illegal," the voluntary payment doctrine may nevertheless prevent the Robinsons from recovering that money from Washington Mutual. *See Carter v. Montgomery Ward & Co.*, 413 So. 2d 309, 314 (La. Ct. App. 1982) (holding that where an employee had no right to workers compensation benefits once he was well and able, the voluntary payment doctrine nonetheless precluded the employer from recovering such overpayments).

knowledge of the facts cannot be recovered back." *Ken Lawler Builders, Inc. v. Delaney*, 892 So. 2d 778, 780 (La. Ct. App. 2005) (citation omitted). This doctrine exists because of "the stabilizing legal principle preventing payors from disturbing the status quo by demanding reimbursement subsequently of payments made by them voluntarily with full knowledge of [the] facts." *Whitehall Oil Co. v. Bogani*, 255 So. 2d 702, 705 (La. 1969);[5] *see also Hicks v. Levett*, 140 So. 276, 281 (La. Ct. App. 1932) ("If in every instance in which a man is in doubt as to which is the safe course to pursue, he can pay under protest and then sue to recover back, it is difficult to see where litigation ends.").

It is clear that the Robinsons voluntarily paid the Administrative Fee with knowledge of the relevant facts. Washington Mutual specifically disclosed that it was assessing a $500 Administrative Fee in exchange for modifying the loan. To the extent the Robinsons did not understand the nature of the fee or objected to its imposition, the cover letter provided a toll-free number to call if they had any "additional questions or concerns." The Robinsons could have objected or disputed the fee at that time; however, the Robinsons signed the LMA and paid the Administrative

---

[5]The Robinsons cite *Bogani* in support of their position that the voluntary payment doctrine is no longer an impediment under Louisiana law. The *Bogani* court, however, recognized the validity of the doctrine, but merely concluded that it was not applicable to the specific oil royalty overpayments at issue in the case.

5

Fee in full.

Furthermore, the Robinsons cannot argue that the payment was made under duress and, therefore, was not voluntary. Duress exists where either (1) "a person physically compels conduct" or (2) "a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent." *Comeaux v. Entergy Corp.*, 734 So. 2d 105, 107 (La. Ct. App. 1999). Although homeowners faced with foreclosure may agree to any fee required to stop such foreclosure, the threat of foreclosure does not constitute duress. *See* LA. CIV. CODE ANN. art. 1962 ("A threat of doing a lawful act or a threat of exercising a right does not constitute duress."); *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 876 (5th Cir. 1984) ("[I]t is the established rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court . . . at least where the threatened action is made in good faith . . . .").

The Robinsons, however, argue that LA. CIV. CODE ANN. art. 2299 permits their recovery, eliminating the impediment posed by the voluntary payment doctrine. Art. 2299 states: "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." This statute, however, is inapplicable to the case at hand. The purpose of arts. 2298-2305 is to prevent unjust enrichment by "establish[ing] a cause of action against one who has been enriched without cause at the

6

expense of another." *Onstott v. Certified Capital Corp.*, 950 So. 2d 744, 749 (La. Ct. App. 2006); *see also Evangeline Iron Works, Ltd. v. Lyons*, 96 So. 2d 578, 580 (La. 1957) (stating that art. 2301–the predecessor statute of art. 2299–establishes a cause of action in quasi-contract). Here, however, the Robinsons did not assert any cause of action sounding in unjust enrichment as the basis for their recovery of the $500;[6] therefore, art. 2299 is inapplicable and cannot prevent the application of the voluntary payment doctrine.

Thus, the voluntary payment doctrine bars the Robinsons' recovery of the Administrative Fee.[7]

---

[6]The Robinsons never contend that the Administrative Fee was excessive, unwarranted, or unjustified based on the services provided by Washington Mutual; instead, the Robinsons' contention is merely that they should not have been required to pay the fee because the fee was provided in the cover letter, not the LMA. Indeed, it is unsurprising that the Robinsons make no claim based on unjust enrichment, as there is no unjust enrichment to rectify–Washington Mutual provided an extra service to the Robinsons, and the Robinsons paid a fee in exchange for that service. In fact, if this Court were to nullify the Administrative Fee, then it would be the Robinsons who are enriched at the expense of Washington Mutual, as they would have received a valuable service–the modification of their loan–for free.

[7]This result may seem initially harsh, as homeowners are in a disparate bargaining position with mortgagees threatening to foreclose on their homes and are likely to agree to any fee to prevent such foreclosure. However, this harsh result is tempered by the potential application of art. 2299, which will allow such homeowners to contest and recover fees that are excessive, unwarranted, or unjustified. Under this Court's analysis, homeowners will simply be unable to recover fees knowingly and voluntarily paid where such fees are an accurate assessment of services rendered.

7

For the foregoing reasons, the order of the district court is AFFIRMED.